**COPELANDS' ENTERPRISES, INC.,**
**dba Copelands' Sports,**
**Appellant,**

**v.**

**CNV, INC., Appellee.**

**Nos. 90–1451, 90–1457.**

United States Court of Appeals,
Federal Circuit.

Oct. 1, 1991.

Douglas E. Olson, Lyon & Lyon, Los Angeles, Cal., argued for appellant, Dale Nelson; Daniel J. Meaney, Jr., Santa Barbara, Cal., of counsel, on brief.

Hamilton Loeb, Paul, Hastings, Janofsky & Walker, Washington, D.C., argued, Thomas A. Lorenzen and William G. Maddox, on brief, Karen E. Silverman, Paul, Hastings, Janofsky & Walker, Washington, D.C., and Allen S. Resnick, Paul, Hastings, Janofsky & Walker, of Los Angeles, Cal., for appellee.

Before RICH, ARCHER and MICHEL, Circuit Judges.

ARCHER, Circuit Judge.

Copelands' Enterprises, Inc. (Copelands) appeals from the final decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (TTAB or board) in Cancellation No. 16,128 and Opposition No. 75,373 (May 24, 1990). In these cases, the board granted the motion of CNV, Inc. (CNV) for summary judgment, holding that CNV had not "intend[ed] to deceive or mislead the public or the Office" by its "technically improper" use of a trademark registration notice (a circled "R" symbol), *see* 15 U.S.C. § 1111 (1988), in connection with the marks VUARNET and VUARNET FRANCE prior to their registration in the United States. We vacate and remand.

## I

From 1979 until April 1986, Copelands' several retail sporting goods stores in the United States sold genuine VUARNET-brand sunglasses manufactured in France by Sporoptic Pouilloux, S.A. (Pouilloux). At first, the glasses were supplied to Copelands by Schwarz, CNV's predecessor, and from May 1981 until late 1982 by CNV. Copelands also purchased glasses from other sources when CNV was unable to satisfy its requirements. CNV advised Copelands in late 1982 that it would no longer supply VUARNET-brand sunglasses to Copelands and thereafter Copelands obtained VUARNET-brand sunglasses exclusively from other sources, one of which Copelands asserts represented itself to be an authorized distributor in the United States of VUARNET-brand sunglasses by Pouilloux.

On February 3, 1983, CNV's attorney, Michael Lindsey, notified Copelands by mail that (1) the VUARNET mark was registered in the United States for, among other things, sunglasses and other protective glasses, (2) CNV, as the exclusive owner of the VUARNET mark in the United States, had "the sole right to use and control the use of" that mark in connection with sunglasses, and (3) Copelands' unauthorized use of the VUARNET mark constituted trademark infringement. The letter further stated: "On behalf of our client, we hereby demand that you ... cease and desist from any further use of the 'Vuarnet' mark ... in connection with the sale of sunglasses or other protective glasses."

Subsequently, Copelands determined that the VUARNET mark had not been registered in the United States but was then merely the subject of a pending application filed November 22, 1982, naming Pouilloux as applicant. In a letter dated February 23, 1983, Copelands' counsel notified Lindsey of the inaccuracies in his February 3 letter. Included in the Copelands letter were brochures and other sales materials distributed by CNV. These materials illustrated that CNV was using the circled "R" registration symbol with unregistered marks. CNV accompanied the unregistered VUARNET mark with the registration symbol, and in an unregistered V-shaped symbol incorporating the words VUARNET FRANCE (the VUARNET FRANCE mark), CNV accompanied the VUARNET portion of the mark with the registration symbol. The Copelands letter pointed to the legal basis for saying these practices were improper and could preclude registrations. A demand was made that CNV cease such improper use of the registration symbol. The letter stated:

> The above usage and marking of the goods with a notice of registration by use of the symbol [circled R] is a fraudulent misuse of the mark and subjects the mark to cancellation, if registered, and will support a refusal to register. We call your attention to the case of *Fox–Stanly Photo Products, Inc. v. Otaguro*, 333 [339] F.Supp. 1293, (D. [sic, Mass.] 1972), 174 U.S.P.Q. 257, where the Court held that misuse of notice of registration of a mark was unclean hands so as to bar registration.

> The Trademark Manual of Examining Procedure at Section 902.03 provides that fraudulent intent and purpose in using a federal registration symbol is a basis for refusal of registration. Thus, we believe that the pending application can be opposed for registration for the above reasons.

> . . . .

> We hereby demand that you promptly and immediately cease and desist from using the notice of registration of the mark VUARNET by use of the notice of registration symbol [circled R] and that you promptly advise the Examiner in charge of United States Trademark Application Serial No. 403,393 of the intentional and fraudulent misuse of that pending mark.

Although Lindsey sent Copelands' letter to CNV, CNV did not respond to that letter. CNV continued to accompany the unregistered VUARNET and VUARNET FRANCE marks with the registration symbol.

The VUARNET mark was federally registered in May 1984. Pouilloux assigned the registered mark to CNV in December 1984 and the assignment was recorded in the Patent and Trademark Office in January 1985. CNV applied for registration of the VUARNET FRANCE mark in May 1985, and that mark was published for opposition in November of 1986.

On December 31, 1986, Copelands filed a petition to cancel the registration of the VUARNET mark and an opposition to CNV's application for registration of the VUARNET FRANCE mark.[1] In the cancellation proceeding, Copelands alleged that CNV's misuse of the registration symbol justified the cancellation of the VUARNET mark registration. In its opposition to the registration of the VUARNET FRANCE mark, Copelands asserted that CNV's registration symbol misuse justified a refusal of registration of that mark. CNV filed motions for summary judgment in these proceedings on August 6, 1987.[2] Considering only the declarations of record, the board, in both proceedings, granted CNV summary judgment on Copelands' registration symbol misuse claim. *See* TTAB Orders dated April 22, 1988. In both proceedings, the board denied Copelands' request for reconsideration of the grant of summary judgment.[3] *See* TTAB Orders dated August 31, 1988.

**II**

A. The issue before us in both proceedings is whether the board properly granted CNV's motion for summary judgment on Copelands' claim that CNV had misused the registration symbol. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (in banc). "The movant bears the burden of demonstrating absence of all genuine issues of material fact." *SRI*, 775 F.2d at 1116, 227 USPQ at 581; *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149, 229 USPQ 721, 722–23 (Fed.Cir. 1986).

The moving party need not "produce evidence showing the absence of a genuine issue of material fact"; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

*Avia Group Int'l v. L.A. Gear Calif.*, 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1551 (Fed. Cir.1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).

---

1. CNV characterizes Copelands' imports of VUARNET-brand glasses as gray market goods. After the VUARNET mark was assigned to CNV, it registered the mark with the U.S. Customs Service in November 1985. In April 1986, Customs seized a shipment of genuine Pouilloux-made VUARNET-brand sunglasses shipped from Europe and intended for Copelands. These events have no relevance to the misuse issue, except that it may have been the underlying reason for Copelands' action in petitioning to cancel the VUARNET registration and in opposing the registration of the VUARNET FRANCE mark. Moreover, at least until the registration of the VUARNET mark in the United States and the recordation of the assignment of that registered mark to CNV by Pouilloux, the importations were not gray market goods covered by section 526 of the Tariff Act of 1930, c. 497, Title IV, 46 Stat. 741, codified as amended at 19 U.S.C. § 1526 (1988).

2. CNV's motions for summary judgment resulted in a suspension of the proceedings and discovery pursuant to Trademark Rule of Practice 2.127(d). (Order dated August 24, 1987.) Copelands argues that it properly requested a Rule 56(f) continuance of decision on the motion for summary judgment in order to conduct discovery on the misuse issue, while CNV contends that Copelands' request was insufficient under Rule 56(f). In view of our decision reversing summary judgment and remanding for further proceedings, it is unnecessary to resolve this dispute.

3. Copelands' cancellation petition and opposition notice each contained allegations other than registration symbol misuse. In accordance with a stipulation between Copelands and CNV, the board dismissed with prejudice these other claims. Before the other claims were dismissed, however, Copelands had filed an appeal with this court which was dismissed as premature. *Copelands' Enterprises, Inc. v. CNV, Inc.*, 887 F.2d 1065, 12 USPQ2d 1562 (Fed.Cir. 1989) (in banc).

A nonmovant, on the other hand, "must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact." *Avia Group*, 853 F.2d at 1560, 7 USPQ2d at 1550. However, the evidence must be viewed in a light most favorable to the nonmovant and all reasonable inferences must be drawn in its favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *SRI*, 775 F.2d at 1116, 227 USPQ at 581. The nonmoving party "need only present evidence from which a jury might return a verdict in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

■ B. The owner of a trademark registered in the United States may display with the mark a notice of that registration, such as the registration symbol consisting of "the letter R enclosed within a circle." 15 U.S.C. § 1111. The improper use of a registration notice in connection with an unregistered mark, if done with intent to deceive the purchasing public or others in the trade into believing that the mark is registered, is a ground for denying the registration of an otherwise registrable mark. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1101, 192 USPQ 24, 27 (CCPA 1976); *see also Johnson Controls, Inc. v. Concorde Battery Corp.*, 228 USPQ 39, 44 (TTAB 1985); *Libbey–Owens–Ford Glass Co. v. Plastron, Inc.*, 80 USPQ 591, 592 (Comm'r Pat. 1949); *Weil & Durrse v. United Piece Dye Works*, 70 USPQ 36, 37 (Comm'r Pat.1946). In *Johnson Controls*, the board set forth its position as follows:

The improper use of the registration symbol by an applicant will defeat applicant's right to registration only in those cases where it is conclusively established that the misuse of the symbol was occa-sioned by an intent to deceive the purchasing public or others in the trade into believing that the mark was registered. 228 USPQ at 44. The Trademark Manual of Examination Procedures, § 902.04, as amended by Rev. 6, Examination Guide 26–83 (1983), requires denial of registration "[i]f there is clear evidence of fraud in the use of the registration symbol on specimens in an application." *See also* Trademark Manual of Examination Procedures, §§ 902.03, 1213. In situations involving only questionable misuse, the examining attorney is required to inform the applicant of the illegality of the use of a registration symbol in connection with a mark for which no federal registration exists. *See Examination Guide*.[4]

### III

■ In granting CNV's summary judgment motion, the board relied on the declarations submitted by CNV as an undisputed showing that CNV's improper use of the registration symbol was through mistake and without fraudulent intent. It held that the facts and conclusion set forth in the declarations excused CNV's improper use as a matter of law. Contrary to the board's determination, however, we conclude that there was sufficient other evidence in the record, if reasonable inferences are drawn in favor of the nonmovant, Copelands, to counter the conclusory assertions in the CNV declarations that its misuse of the registration symbol was due to mistake and lack of intent to deceive or mislead. Thus, we are not convinced that CNV was entitled to summary judgment as a matter of law. *See Albert v. Kevex Corp.*, 729 F.2d 757, 762, 221 USPQ 202, 207 (Fed.Cir.), *aff'd on reh'g*, 741 F.2d 396, 223 USPQ 1 (Fed.Cir.1984); Fed.R.Civ.P. 56(a).

Before the board, CNV submitted declarations of (1) Peter Mentges, CNV's chairman, (2) Joseph Hatchiguian, Pouilloux'

---

**4.** In the past, the Trademark Office and the board required statements demonstrating that any alleged inadvertent misuse was the result of mistake or lack of an intent to deceive or mislead and that there has been an effort to discontinue the offending use. *See* Trademark Man-ual of Examining Procedures § 902.04 (1974); *Sauquoit Paper Co. v. Weistock*, 46 F.2d 586, 587–88, 18 CCPA 927, 8 USPQ 349, 350–51 (1931); *Johnson Controls*, 228 USPQ at 44; *Knorr–Nahrmittel Aktiengesellschaft v. Havland Int'l, Inc.*, 206 USPQ 827, 833 (TTAB 1980).

general manager, (3) Yves Marcellin, a French attorney, and (4) Michael Lindsey, CNV's attorney. Mentges explained that prior to late February 1983 he believed the VUARNET mark was registered in the United States. After receiving Copelands' February 3 letter informing that the VUARNET mark was not registered, Mentges averred that he contacted Pouilloux officials who explained that the registration symbol could properly be used with the VUARNET mark to designate French and other foreign registrations. Mentges stated in conclusory fashion that he honestly and sincerely believed Pouilloux' explanation, and any improper use was unintentional, inadvertent, and was not intended to deceive the public.

Hatchiguian corroborated that Mentges sought Pouilloux' advice about Copelands' letter and that Pouilloux officials assured Mentges that CNV could properly use the registration symbol to designate foreign registrations. Hatchiguian also asserted that any misuse was unintentional, inadvertent, and was not intended to deceive the American public.

Marcellin explained in his declaration that while the registration symbol has no legal significance under French law, marks registered in France are commonly accompanied by that symbol. Its use, he explained, is "due to mistake, confusion, or ignorance with regard to French and international law."

Finally, Lindsey's declaration stated only that he sent the February 23 letter to Copelands based on his "understanding" that the VUARNET mark was federally registered by Pouilloux and Pouilloux had granted CNV exclusive rights to use the mark in the United States, and that "[s]hortly after receiving [the Copelands] letter, I sent a copy of it to my client, CNV."

As a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment. *See KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1575, 228 USPQ 32, 34–35 (Fed.Cir.1985) (*citing Pfizer, Inc. v. International Recti-*

*fier Corp.,* 538 F.2d 180, 185, 190 USPQ 273, 277 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977) ("summary judgment is inappropriate where issues of fact, intent [and] good faith ... predominate")); *Albert,* 729 F.2d at 763, 221 USPQ at 207. ("Intent is a factual matter which is rarely free from dispute.... [C]utting off Albert's right to trial on the issue was improper.") Although purporting to explain its actions, CNV's self-serving declarations are insufficient in the context of summary judgment to overcome other evidence of deceptive use of the registration symbol. Instead, the sequence of events here raises serious questions as to CNV's purpose and intent in using the registration notice, and, more importantly, continuing to use it after being specifically notified of the impropriety of such use.

CNV, through its attorney, initially aggressively misrepresented the status of the VUARNET mark, an action consistent with intent to mislead or deceive. The evidence clearly indicates that CNV was attempting to prevent Copelands from selling its inventory of VUARNET glasses and from obtaining glasses from other sources.

Faced with the specific charges in the Copelands' reply letter and its demand that the Trademark Office be notified of CNV's alleged misuse of the registration notice, the record indicates that CNV made no attempt to seek legal advice on these issues. Instead, CNV merely consulted Pouilloux officials located in France, who were not represented to have any expertise in United States trademark law. Thus, there is no showing of a good faith effort to evaluate Copelands' charges and demands. CNV's conclusory assertion of lack of intent to deceive or mislead becomes suspect in the context of CNV's actions.

Significant questions also exist as to whether or not Lindsey gave CNV any advice after he received Copelands' February 3 letter and became aware that the VUARNET mark was unregistered.[5] It

---

**5.** The board stated that "[i]t is unclear as to why      counsel at that time did not advise [CNV] re-

could reasonably be inferred that Lindsey, CNV's trademark attorney, would have provided CNV some legal advice regarding use of the registration symbol. Lindsey's declaration, however, discloses only that he forwarded Copelands' letter to CNV. Moreover, Lindsey was made counsel of record for Pouilloux to prosecute the application for registration of the VUARNET mark within a month after receipt of the Copelands letter and should have had knowledge of the continued use of the registration symbol on the unregistered VUARNET mark. Nothing in the record indicates that the Trademark Office was advised of the improper registration symbol misuse before registration of the VUARNET mark.[6]

Based on all of the evidence of record, we conclude that the ultimate issue of whether CNV intended to mislead or deceive the public or others in the trade was not properly decided on summary judgment.[7] *KangaROOS*, 778 F.2d at 1575, 228 USPQ at 34–35; *Albert*, 729 F.2d at 763, 221 USPQ at 207; Fed.R.Civ.P. 56(c).

The case is remanded to the board for trial on the issue of registration symbol misuse.

**VACATED AND REMANDED.**

garding proper use of the registration symbol." Board op. at 8 n. 5. The board erroneously concluded that Lindsey had not offered legal advice; no evidence was offered either way on that issue.

6. Whether Lindsey provided CNV any advice *at all* about the proper use of the registration symbol after he became aware of CNV's improper use is important to the question of intent and the good faith of CNV. Moreover, Lindsey's apparent failure to take *any* steps to prevent further misuse of the registration symbol or to notify the Trademark Office of the past and continuing registration symbol misuse could constitute gross negligence and reckless disregard of the law. *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562, 11 USPQ2d 1750, 1755 (Fed.Cir.1989), *cert. denied,*

493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990); 1 J. McCarthy, *Trademarks and Unfair Competition* § 19.54 (2d ed. 1984). Lindsey's precise relationship to CNV and/or Pouilloux would be pertinent to a determination of whether Lindsey's negligence should be attributed to them.

7. The board, in its decisions, did not consider whether there must be "an effort to discontinue the offending use," *see, e.g., Knorr–Nahrmittel*, 206 USPQ at 833, when an applicant for registration becomes aware that the registration symbol has improperly been used with the unregistered mark. In view of our decision that summary judgment was improvidently granted, we need not decide this issue, but in the event it is properly raised on remand the board should consider the issue in the first instance.