9/27/01

**THIS DISPOSITION
IS NOT CITABLE AS PRECEDENT
OF THE T.T.A.B.**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**2900 Crystal Drive**
**Arlington, Virginia 22202-3513**

EAD

Opposition No. 118,181

Pfizer, Inc.

v.

Gregg Hamerschlag

Before Cissel, Chapman, and Wendel, Administrative Trademark Judges.

By the Board:

Pfizer, Inc. filed a notice of opposition to registration of the mark CLIAGRA for "natural, herbal vitamins and mineral supplements, namely an herbal aphrodisiac to enhance female sexual desire"[1] on the grounds that applicant's mark so resembles opposer's previously used and registered mark VIAGRA for "compound for treating erectile dysfunction" (Registration No. 2,162,548[2]) as to be likely to cause confusion, mistake or deception; and that

---

[1] Application Serial No. 75/599,401 was filed on December 4, 1998 under Trademark Act Section 1(b) based on applicant's assertion of a *bona fide* intention to use the mark in commerce.
[2] Registration No. 2,162,548, issued on June 2, 1998.

applicant's CLIAGRA mark will cause dilution[3] of the famous and distinctive quality of opposer's VIAGRA mark.

On March 27, 2001, opposer filed a motion to amend its notice of opposition to add claims (i) that application Serial No. 75/599,401 is void *ab initio* under Trademark Act Section 1(b) because applicant did not have a *bona fide* intent to use the mark in commerce when he filed the application, and (ii) that applicant made an invalid assignment of his intent-to-use application under Trademark Act Section 10. On the same date, opposer also filed a motion for summary judgment on the Section 1(b) and Section 10 claims.

Turning first to opposer's motion to amend, which was accompanied by a signed copy of the amended notice of opposition, we note that the Board received no opposition to the motion. Further, on May 16, 2001, applicant filed its answer to the amended notice of opposition.[4]

---

[3] Opposer is advised that dilution claims are properly based not on Trademark Act Section 2(f) of the Trademark Act (cited by opposer in its notice of opposition) but on Section 43(c). Further, opposer is advised that its dilution claim was not properly pleaded insofar as there is no allegation as to when opposer's mark became famous. *Polaris Industries, Inc. v. DC Comics*, 59 USPQ2d 1798 (TTAB 2000).

[4] Both applicant's original answer and answer to the amended notice of opposition seek an award of "all costs, including a reasonable attorney's fee". Pursuant to Trademark Rule 2.127(f), the Board will not award attorneys' fees or other expenses to any party. *See Duke University v. Haggar Clothing Co*., 54 USPQ2d 1443 (TTAB 2000*);* Trademark Trial and Appeal

Opposer's motion to amend its notice of opposition is granted pursuant to Fed. R. Civ. P. 15(a) and Trademark Rule 2.107. Accordingly, both opposer's amended notice of opposition and applicant's answer thereto are accepted.

Turning to opposer's motion for summary judgment, the granting of a motion for summary judgment is appropriate where there exists no genuine dispute as to any material fact and where the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Pro. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986).

We consider first the pleaded ground that applicant did not have a *bona fide* intent to use the mark in commerce when the application was filed and the application is void *ab initio* under Section 1(b). In support of its motion, opposer relies, *inter alia*, on applicant Gregg Hamerschlag's deposition testimony that he has invested no money in the development of the CLIAGRA product and possesses no business plans to develop said product; and applicant's discovery responses producing, in response to more than 40 requests for

---

Board Manual of Procedure (TBMP) §502.06. Applicant's request is denied.

3

documents relating to applicant's CLIAGRA mark, only

copies of opposer's three letters to applicant regarding

the mark and a copy of his involved trademark

application.

In opposing the motion for summary judgment, Mr.

Hamerschlag relies on his deposition testimony, and his

affidavit[5] which show that at the time Hamerschlag filed

---

[5] In its reply brief, opposer included a "motion" to strike Mr. Hamerschlag's entire affidavit (submitted with applicant's opposition to the motion for summary judgment) on the ground that it contradicts his prior deposition testimony. A party cannot create an issue of fact by supplying an affidavit contradicting his prior deposition testimony without explaining the contradiction or attempting to resolve the disparity. *Sinskey v. Pharmacia Opthalmics, Inc.*, 982 F.2d 494, 25 USPQ2d 1290 (Fed. Cir. 1992) *cert. denied*, 508 U.S. 912 (1993). Here, upon careful review of the deposition testimony and affidavit, we find that Mr. Hamerschlag's affidavit does not contradict so much as it clarifies and explains responses given in his deposition testimony. Opposer's motion to strike the Hamerschlag affidavit is denied.
 We hasten to add that, insofar as the deposition testimony establishes that applicant had plans to manufacture and market its herbal aphrodisiac, the deposition testimony alone raises a genuine issue of material fact regarding applicant's bona fide intent to use the involved mark in commerce and striking the affidavit would not alter the outcome of the summary judgment motion in this regard.
 Attached to applicant's affidavit were additional documents which applicant claims show his *bona fide* intent to use the mark in commerce. In his affidavit, applicant states that he did not remember the existence of these documents at the time of his deposition and only discovered them at an unspecified later point.
 Also in its reply brief opposer included another "motion" to strike these documents on the ground that they were not disclosed during discovery, and applicant's discovery responses were not supplemented when applicant found the responsive documents. Pursuant to Fed. R. Civ. P. 37(c), opposer's motion is granted and we have given the documents attached to Mr.

his trademark application for the CLIAGRA mark he intended to market the product in magazines and other print media; that he conducted research before filing the application and his research demonstrated to him that he could buy, package, and sell the product with his own funds; that because he would not be seeking investors or borrowing funds to launch the product he did not see the necessity of a formal business plan; that he did not want to invest time and effort on building a brand until he secured rights to the name; and that his intention was to develop the product upon completion of the registration process.

As a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment. *See Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 20 USPQ2d 1295 (Fed. Cir. 1991). The Board has held, however, that the absence of any documentary evidence regarding an applicant's *bona fide* intention to use a mark in commerce is sufficient to prove that an applicant lacks such intention as required by Section 1(b) of the Trademark Act, unless other facts are presented which adequately explain or outweigh

---

Hamerschlag's affidavit no consideration in reaching our decision herein.

applicant's failure to provide such documentary evidence.  *See Commodore Ltd. v. CBM Kabushiki Kaisha*, 26 USPQ2d 1503 (TTAB 1993).  Here, applicant's deposition testimony and affidavit regarding his modest and informal business plan for his intended use of the mark CLIAGRA is sufficient to raise a genuine issue as to his *bona fide* intention to use a mark in commerce in the context of opposer's motion for summary judgment. *See Lane Ltd. v. Jackson International Trading Co.*, 33 USPQ2d 1351, 1356 (TTAB 1994).

After a careful review of the parties' arguments, and drawing all reasonable inferences in favor of applicant as the non-moving party, we find that disposition of the issue of applicant's *bona fide* intention to use the mark in commerce by summary judgment is inappropriate.  There is a genuine issue of fact regarding applicant's *bona fide* intention to use the involved mark in commerce.  In view of the foregoing, opposer's motion for summary judgment is denied on the Section 1(b) claim.

We next consider opposer's motion for summary judgment on the ground that applicant filed an invalid assignment of the intent-to-use application and the application is void *ab initio* under Trademark Act Section 10.

Opposer has moved for summary judgment on the ground that the unlawful assignment voids the application because Gregg Hamerschlag did not have an ongoing and existing business under the CLIAGRA mark that could be assigned to a successor and thus did not meet the statutory exception for assignment of intent-to-use applications.  In its motion opposer relies upon the undisputed facts that applicant has invested no money in the development of the CLIAGRA product; that since filing the application, applicant has done nothing to bring the product to market; that when applicant assigned the application, he did not assign related business assets to Cliagra LLC; and that applicant assigned nothing other than the trademark to Cliagra LLC.  Opposer also relies, *inter alia*, on applicant Gregg Hamerschlag's deposition testimony in which applicant states that "at the time I transferred the mark to Cliagra LLC, I as an individual did not have any business, ongoing business using the mark." (Hamerschlag Dep. Pages 56-57).

In support of his position that he did have an ongoing and existing business, and thus the assignment of his intent-to-use application for the involved mark fit the statutory exception for an assignment of an intent-to-use application to a successor to the business, Mr.

7

Hamerschlag submits his affidavit in which he states that Cliagra LLC is a limited liability company organized under the laws of Vermont; that he is the sole member; that he formed Cliagra LLC after learning of opposer's opposition to registration of the CLIAGRA mark; and that he assigned his application to Cliagra LLC on advice of counsel in order to protect himself from personal liability. Applicant argues that Cliagra LLC is clearly a successor business to Gregg Hamerschlag and that both the businesses of Cliagra LLC and Gregg Hamerschlag were ongoing and existing at the time of the assignment.

The record makes clear that Gregg Hamerschlag filed application Serial No. 75/599,401 under Trademark Act Section 1(b) on December 4, 1998; that applicant assigned application Serial No. 75/599,401 to Cliagra, LLC on August 9, 1999[6]; and that applicant assigned the application prior to the filing of an allegation of use under Section 1(c) or Section 1(d).

Trademark Act Section 10 states, in pertinent part (*emphasis* added):

> A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which

---

[6] The U. S. Patent and Trademark Office Assignment Branch records indicate that the assignment was recorded at Reel 1991, Frame 0121.

8

the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark. Notwithstanding the preceding sentence, no application to register a mark under section 1(b) shall be assignable prior to the filing of an amendment under section 1(c) to bring the application into conformity with section 1(a) or the filing of the verified statement of use under section 1(d), *except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing.*

The legislative history of Section 10 states that "Permitting assignment of applications before a mark is used would conflict with the principle that a mark may be validly assigned only with some of the business or goodwill attached to use of the mark and would encourage trafficking in marks."  S. 1883, 100th Cong., 1st Sess., 133 Cong. Rec. §16552 (daily ed. November 19, 1987), *reprinted in* United States Trademark Association, The Trademark Law Revision Act of 1988 (1989).[7]  The Board has held that the Section

---

[7] We note that the assignment document, in which Hamerschlag merely transferred his "title and interest" in the application, is a naked transfer which does not convey to the assignee any goodwill associated with the mark.  A trademark cannot be sold or assigned apart from the good will it symbolizes.  Trademark Act Section 10; and *The Clorox Co. v. Chemical Bank*, 40 USPQ2d 1098 (TTAB 1996).  Accordingly, the assignment is also invalid as a prohibited assignment in gross.

requirement that applicant's business be "ongoing and existing" fills a loophole that would permit otherwise prohibited assignments. "For example, an 'intent to use' applicant may intend to create a new business in which the mark will be used but decide, after the application is made, not to do so. Without the requirement that the business be 'ongoing and existing,' the applicant would be able to assign the marks that are the subject of the 'intent to use' application to another business, which purports to be a successor to the first company's no longer existing business. By closely limiting assignments, these provisions will protect against trafficking in marks and help ensure that the intention of the 'intent to use' applicant is *bona fide*." *The Clorox Co. v. Chemical Bank*, 40 USPQ2d 1098 (TTAB 1996). *See also, In re Circuit City Stores West Coast Inc.*, 40 USPQ2d 1536 (Comm. 1996)(statutory exception not met when applicant wishes to transfer ownership of applications to sister subsidiary "since no other assets are intended to be transferred with the subject applications"). Unless the statutory exception is met, the legal effect of assigning an intent-to-use application, prior to the filing of a verified allegation

of use, is that the application is void.[8]  *The Clorox Co.*

*v. Chemical Bank, supra.*

Upon careful consideration of the arguments and
evidence presented by the parties, we find that there is
no genuine issue of material fact that applicant did not
have an ongoing and existing business pertaining to the
CLIAGRA mark at the time he assigned his application.
Applicant does not claim that he is or was in the
business of selling the identified herbal aphrodisiacs,
the business pertaining to the CLIAGRA mark.  Instead,
applicant specifies "the battle against Pfizer for use of
the mark 'Cliagra'…was its only business then and that is
its only business now."  Unwittingly or not, a party who
has no business except obtaining a trademark on the basis
of intent to use and who prior to starting a business
assigns that application to another falls squarely into
the trademark trafficking activity that Section 10 is
intended to preclude.

---

[8] We note that the recordation of transfer of interest documents
at the U.S. Patent and Trademark Office Assignment Branch is a
ministerial act.  It does not include a decision on the legal
sufficiency or the legal effect of the document(s) offered for
recordation.

In sum, we find that there is no genuine issue of material fact that applicant did not have an ongoing and existing business pertaining to the involved mark and, as a result, applicant did not meet the statutory exception when he assigned his intent-to-use application to the "successor" to the as-yet unrealized business to which the CLIAGRA mark pertains.  Therefore, as a matter of law the assignment of application Serial No. 75/599,401 violated Section 10 of the Trademark Act, and the application is void.  Opposer's motion for summary judgment is granted on the ground based on Section 10 of the Trademark Act, and judgment is entered against applicant on that basis.

Accordingly, the opposition is sustained on opposer's Section 10 ground, and application Serial No. 75/599,401 is refused registration as being void.