**THIS DISPOSITION
IS A PRECEDENT
OF THE TTAB**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Lykos

Mailed:  May 2, 2008

Opposition Nos. 91168142
                91170668

University Games Corporation

v.

20Q.net Inc.

Before Quinn, Grendel and Walsh, Administrative Trademark Judges.

By the Board:

On December 23, 2003, 2OQ.net, Inc. ("applicant") filed applications to register the mark 20Q for "software for collecting data in the field of artificial intelligence" in International Class 9, and "entertainment services, namely, providing an on-line interactive question and answer computer game" in International Class 41;[1] as well as the stylized version of the 20Q mark displayed below:

---

[1] Application Serial No. 78344917, filed December 23, 2003, alleging a bona fide intent to use the mark in commerce for the goods identified in International Class 9, and February 28, 1997 as the date of first use anywhere and in commerce for the services identified in International 41.



for "hand-held unit for playing electronic games software for collecting data in the field of artificial intelligence" in International Class 28.[2]

In each instance, University Games Corporation ("opposer") has opposed registration on the grounds that applicant's applied-for marks (1) so resemble opposer's previously used and registered mark TWENTY QUESTIONS for a board game that they are likely to cause confusion, mistake, or deceive prospective consumers under Section 2(d) of the Lanham Act; and (2) will dilute the distinctive quality of opposer's previously used and registered mark under Section 43(c) of the Lanham Act as amended. In both notices of opposition, opposer pleaded ownership of the following registration on the Supplemental Register:

---

[2] Application Serial No. 78344922, alleging a bona fide intent to use the mark in commerce.

Registration No. 1498165 for the mark TWENTY QUESTIONS for "a board game for correctly identifying well-known persons, places, things and years using game cards and board pieces" in International Class 28.[3]

Applicant, in its answers to the notices of opposition, denied the salient allegations therein, asserted various affirmative defenses, and counterclaimed for cancellation of opposer's pleaded registration on the ground of genericness.

In these subsequently consolidated proceedings, this case now comes before the Board for consideration of (1) applicant's motion to amend its answers to add a counterclaim of fraud, and (2) applicant's motion for summary judgment on its proposed counterclaim of fraud. Opposer has filed a responsive brief in opposition to applicant's motion for summary judgment.

I.  **Motion to Amend**

Inasmuch as opposer has not contested this motion, applicant's motion to amend is granted as conceded.  See Trademark Rule 2.127(a) and Fed. R. Civ. P. 15(a).

In view thereof, applicant's amended answers to assert a counterclaim of fraud are hereby noted and made of record in these consolidated proceedings.

---

[3] Registered July 26, 1988, alleging November 5, 1986 as the date of first use anywhere and in commerce, Section 8 affidavit acknowledged.

II.  **Applicant's Motion for Summary Judgment**

For the reasons set forth below, we deny applicant's motion for summary judgment.

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986).  The nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party.  *See Opryland USA, Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).

Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes false, material representations of fact in connection with an application to register.  *See Torres v. Cantine Torresella S.r.l.,* 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986); *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha,*

77 USPQ2d 1917 (TTAB 2006); *Medinol Ltd. v. Neuro Vasx, Inc.* 67 USPQ2d 1205 (TTAB 2003).  A party making a fraud claim is under a heavy burden because fraud must be proved by clear and convincing evidence, leaving nothing to speculation, conjecture, or surmise.  Any doubt must be resolved against the party making the claim.  *Smith International, Inc. v. Olin Corporation*, 209 USPQ 1033 (TTAB 1981).

The undisputed relevant ex parte prosecution history of opposer's pleaded registration is as follows:

-In its original use-based application filed April 9, 1987 to register the mark TWENTY QUESTIONS, opposer paid a fee for a single class of goods, but alleged use of the mark in commerce on goods falling in several classes.  The original identification of goods reads as follows: "Board games, t-shirts and supporting promotional materials including videos and paper products" in International Class 28.  See Prosecution History of Registration No. 1498165.

-Prior to applying for registration of its TWENTY QUESTIONS mark, opposer promoted its board games at gift and toy fairs by distributing catalogs, promotional cards, and t-shirts bearing the mark.  See Declaration of A. Robert Moog, CEO, Paragraph 7 ("Moog Declaration").

-In his first Office action dated June 15, 1987, the examining attorney objected to the classification of opposer's goods as improper, in part because t-shirts did not fall in International Class 28.  The Office action then stated that opposer "must amend [the] application by restricting the goods and/or services to one class(es) [sic] or by paying the additional fee for each class."  The examining attorney also objected to the wording "supporting promotional materials including videos and paper products" in the identification of goods as indefinite.  See Prosecution History of Registration No. 1498165.

-In its December 13, 1987 response to the first Office action, opposer amended its identification of goods to delete the references to t-shirts, paper products, and videos, and restricted the identification to the following: "a board game for correctly identifying well-known persons, places, things and years using game cards and board pieces" International Class 28.  See Prosecution History of Registration No. 1498165.

-On June 18, 1988, the examining attorney approved the application with the amended identification for registration on the Supplemental Register.  See Prosecution History of Registration No. 1498165.

During discovery in this case, applicant obtained the following relevant information from opposer:

-In response to Interrogatory No. 9 of applicant's first set of interrogatories which requested that opposer "[i]dentify each variation of the term 'twenty questions' that Opposer is using or has used, the products or services with which each variation is being used or has been used, and the dates during which each variation has been used with each product," opposer interposed several objections and responded "[o]pposer has sold board games for correctly identifying well-known persons, places, things and years using game cards and board pieces under its TWENTY QUESTIONS mark and stylized 2O QUESTIONS mark continuously since November 1986."

Applicant has moved for summary judgment on its counterclaim of fraud by arguing that opposer fraudulently misrepresented at the time it filed its application that it used its mark in commerce on "t-shirts and supporting promotional materials including videos and paper products," and that such fraud cannot be cured by a subsequent

amendment deleting the goods.  More specifically, applicant contends that opposer's allegation of use in connection with "t-shirts and supporting promotional materials including videos and paper products" at the time of filing constituted a "false and material representation" knowingly made by opposer's CEO, Mr. Moog, and that opposer's subsequent deletion of such goods was not to correct "any innocent mistake or oversight" but rather in response to an ex parte examination requirement.

In opposition thereto, opposer argues that applicant's motion for summary judgment should be denied because opposer's initial assertion of use of its TWENTY QUESTIONS mark on "t-shirts and supporting promotional materials including videos and paper products" in its application was not false in view of the distribution of such materials at trade fairs.  Opposer further contends that because the goods were deleted prior to approval of the mark for registration on the Supplemental Register, even if the statements had been false, the deletion thereof negates the materiality element necessary to prove fraud.

Based on the record before us, we find that that applicant has failed to sustain its burden of proof on summary judgment.  Opposer's responses to applicant's discovery requests and the ex parte prosecution history of opposer's registration by themselves fail to establish the

absence of a genuine issue of material fact regarding opposer's intent to deceive the USPTO. As often stated by the Board, factual questions involving intent and good faith are particularly unsuited to disposition on summary judgment. *Copelands' Enterprises Inc. v. CNV Inc.,* 945 F.2d 1563, 20 USPQ2d 1295, 1299 (Fed. Cir. 1991).

The Board holds, however, that the fact that opposer amended its identification of goods during ex parte prosecution constitutes a rebuttable presumption that opposer lacked the willful intent to deceive the Office. Indeed, the circumstances presented in this case are similar to those contemplated by the Board in *Hurley International LLC v. Volta,* 82 USPQ2d 1339 (TTAB 2007). In dicta, the Board remarked:

> We note . . . that a misstatement in an application as to the goods or services on which a mark has been used does not rise to the level of fraud where an applicant amends the application prior to publication. See *Universal Overall Co. v. Stonecutter Mills Corp.,* 154 USPQ 104 (CCPA 1967).

*Id.* at n.5.

In *Universal Overall, supra,* the applicant in that case incorrectly stated that it used its mark on finished clothing. The Court found that applicant acted in good faith and held that:

> . . . such misstatement did not constitute fraud because [applicant], at the suggestion of the examiner, amended its application prior to publication to recite fabrics

rather than finished clothing, and the assertion of belief in damage in an opposition, must under the terms of [S]ection 13 of statute, be predicated on the application as published rather than as originally filed.

Id. at 985.

Here, there is a genuine issue of material fact as to the nature of the use registrant made of its mark on t-shirts and other promotional materials prior to filing its application to register. Moreover, even if we assume that such use was insufficient to support registration of applicant's mark for those items, applicant has failed to adduce facts in support of its motion for summary judgment that rebut the presumption of no intent to commit fraud, in view of registrant's amendment of its application during examination to delete those goods from the application.

In view thereof, applicant's motion for summary judgment on its counterclaim of fraud is denied.[4]

III. **Counsel for Opposer's Request to Withdraw**

On May 30, 2007, opposer's attorneys filed a request to withdraw as opposer's counsel of record in this case. The request to withdraw as counsel is in compliance with the requirements of Trademark Rule 2.19(b) and Patent and

---

[4] The parties should note that all evidence submitted in support of and in opposition to the motion for summary judgment is of record only for consideration of said motion. Any such evidence to be considered in final hearing must be properly introduced in evidence during the appropriate trial periods. *See Levi Strauss & Co. v. Josephs Sportswear Inc.,* 28 USPQ2d 1464 (TTAB 1993); and *Pet Inc. v. Bassetti,* 219 USPQ 911 (TTAB 1983).

Trademark Rule 10.40, and is accordingly granted.  The law firm of Fenwick and West no longer represents opposer in this proceeding.

In view of the withdrawal of opposer's counsel, and in accordance with standard Board practice, proceedings herein are suspended, and opposer is allowed until thirty (30) days from the mailing date of this order to appoint new counsel, or to file a paper stating that opposer chooses to represent itself.  If opposer files no response, the Board may issue an order to show cause why default judgment should not be entered against opposer based on opposer's apparent loss of interest in the case.

The parties will be notified by the Board when proceedings are resumed.

A copy of this order has been sent to all persons listed below.

cc:

Jedediah Wakefield
Fenwick & West LLP
555 California Street, 12 Floor
San Francisco, CA  94104


James A. Dimitrijevs
Grant A. Monachino
McDonald Hopkins Co., LPA
600 Superior Avenue, E.
Suite 2100
Cleveland, OH  44114

University Games Corporation
4055 Bohannon Drive
Menlo Park, CA 94025

                          * * * * *

Walsh, Administrative Trademark Judge, concurring in part,
dissenting in part:

     While I fully agree with the majority's decision to

deny applicant's summary judgment motion on the fraud claim,

I would go further and grant summary judgment sua sponte to

opposer on that claim.  I commend the majority for

recognizing that opposer's action in amending its

application creates a rebuttable presumption that opposer

did not intend to deceive the Office, but I would go further

and dispose of the fraud claim entirely.

     I would find for opposer because, before registration

and before any actual or threatened challenge to the

application/registration, opposer amended its application to

correct the alleged false statement regarding opposer's

goods.  The fact that opposer amended the application to

delete the relevant goods is not in dispute.  In my view,

opposer's corrective action should preclude a fraud claim:

(i) because the action effectively negated the intent

required to establish fraud, if such an intent ever existed,

and (ii) because the allegedly false statement, once

deleted, was not material to the Office's later approval of

the application.

     This approach is not only consistent with the Board's

longstanding policy disfavoring fraud claims, but it

provides greater clarity and certainty for applicants and

registrants.  It would also encourage applicants to correct errors promptly.  It provides both a bright line and a safe harbor for applicants who are proactive in correcting errors.  I would grant summary judgment sua sponte in favor of opposer because the law disfavors fraud claims even though intent is an element of the claim.

As the majority opinion above notes, "A party making a fraud claim is under a heavy burden because fraud must be proved by clear and convincing evidence, leaving nothing to speculation, conjecture, or surmise.  Any doubt must be resolved against the party making the claim.  *Smith International, Inc. v. Olin Corporation*, 209 USPQ 1033 (TTAB 1981)."  Timely action by an applicant to correct an error raises obvious doubt as to whether the applicant had the intent to commit fraud.  Therefore, the applicant's proactive corrective action dictates that we resolve that doubt in favor of the applicant and bar any fraud claim related to the corrected matter.  See *Universal Overall Co. v. Stonecutter Mills Corp.,* 154 USPQ 104, 105 (CCPA 1967).

In *Universal Overall*, which the majority cited, at filing the applicant incorrectly stated that it used its mark on finished clothing, but the applicant amended the application to correct the error in response to an Office action.  The Court affirmed the Board's determination in an opposition proceeding that there was no basis to find fraud

because the applicant had corrected its error before publication for opposition. *Id.* at 105. Thus, the Court recognized the curative effect of a timely amendment.

The Court decided *Universal Overall* long before the Trademark Act was amended to permit intent-to-use applications and filings of statements of use after publication and after issuance of a notice of allowance. Trademark Act Section 1(b), (c) and (d), 15 U.S.C. § 1051(b), (c) and (d). Under the current law, the logical application of the approach in *Universal Overall* is to extend the same opportunity to correct errors and thereby avoid fraud claims to all applicants, including intent-to-use applicants filing statements of use. In this regard, I note that the rights residing in all applications under the current Act are contingent on registration of the mark. Trademark Act Section 7(c), 15 U.S.C. S 1057(c). Therefore, providing a safe harbor, at least prior to registration, is also consistent with the statutory scheme for the grant of rights related to registration. The approach I adopt here is also fully consistent with the dicta in the Board's recent decision in *Hurley International LLC v. Volta*, 82 USPQ2d 1339 (TTAB 2007), which the majority discussed.

**<u>NEWS FROM THE TTAB</u>**:

The USPTO published a notice of final rulemaking in the Federal Register on August 1, 2007, at 72 F.R. 42242. By this notice, various rules governing Trademark Trial and

Appeal Board inter partes proceedings are amended.  Certain amendments have an effective date of August 31, 2007, while most have an effective date of November 1, 2007.  For further information, the parties are referred to a reprint of the final rule and a chart summarizing the affected rules, their changes, and effective dates, both viewable on the USPTO website via these web addresses:
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242.pdf
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242_FinalRuleChart.pdf

By one rule change effective August 31, 2007, the Board's standard protective order is made applicable to all TTAB inter partes cases, whether already pending or commenced on or after that date.  However, as explained in the final rule and chart, this change will not affect any case in which any protective order has already been approved or imposed by the Board.  Further, as explained in the final rule, parties are free to agree to a substitute protective order or to supplement or amend the standard order even after August 31, 2007, subject to Board approval.  The standard protective order can be viewed using the following web address:
http://www.uspto.gov/web/offices/dcom/ttab/tbmp/stndagmnt.htm