**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

THIS OPINION IS A
PRECEDENT OF THE TTAB

BUTLER

Mailed: January 14, 2010

Cancellation No. 92045099

DAIMLERCHRYSLER CORPORATION and
CHRYSLER, LLC[1]

v.

AMERICAN MOTORS CORPORATION

**Before Hairston, Cataldo and Taylor, Administrative Trademark Judges.**

**By the Board:**

Respondent owns a registration for the following mark:

## ◤▮ AMC

for "automobiles and structural parts thereof."[2]  In accordance with the amended petition to cancel, filed June 15, 2009, and allowed by the Board in its June 26, 2009 order, petitioner alleges the following grounds for cancellation of the registration:  1) priority of use and likelihood of confusion with its AMERICAN MOTORS

---

[1] The Board recognizes that there are two petitioners.  In this order, the position of plaintiff is referred to in the singular (*i.e.*, "petitioner").

[2] Registration No. 2949439, issued on May 10, 2005, claiming a date of first use anywhere of October 28, 2002 and a date of first use in commerce of January 21, 2005.

CORPORATION and AMC[3] marks for "motor vehicles and parts therefor"; 2) fraud;[4] and 3) abandonment. With respect to its standing, petitioner asserts prior common law rights in its AMERICAN MOTORS CORPORATION and AMC marks; and that respondent's registration has been cited by the assigned Trademark Examining Attorney as a bar under Trademark Act §2(d) to the registration of petitioner's pending application Serial No. 78661023 for the mark AMC and design for "toy vehicle replicas."

In its answer to the amended petition to cancel ("pet."), respondent denies the salient allegations of the complaint. Respondent admits paragraph Nos. 10-13 of the complaint wherein petitioner alleges it filed an application to register the mark AMC and design for "toy vehicle replicas" and that such application has been refused in view of the existence of respondent's registration (pet. para. Nos. 10-11); and that respondent filed its application to register its AMC and design mark, that a notice of allowance issued, that respondent received two Office Actions with respect to its Statement of Use and responded thereto; and that respondent's application issued as Registration No. 2949439 (pet. para. Nos. 12-13).

In accordance with the Board's order of June 26, 2009, the discovery period was last set to close on July 16, 2009. This case

---

[3] Petitioner alleges use of its AMC mark with and without a design element, the latter being identical to respondent's design element.

[4] Count II, paragraph Nos. 21-33, setting forth petitioner's allegations of fraud, are discussed in further detail *infra*.

now comes up on petitioner's fully briefed motion, filed two days prior to the close of discovery, for summary judgment on its fraud claim only. To obtain such judgment, petitioner must establish that there is no genuine issue regarding its standing and the merits of its fraud claim.

Respondent's argument that petitioner lacks standing is without merit. A petition to cancel may be brought by any person who believes he is or will be damaged by the registration of a mark. Trademark Act §14, 15 U.S.C. §1064. In order to meet the standing requirement, a plaintiff need only show that it has a real interest, *i.e.,* a personal stake, in the outcome of the proceeding. *See Ritchie v. Simpson,* 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); and *Jewelers Vigilance Committee Inc. v. Ullenberg Corp.,* 823 F.2d 490, 2 USPQ2d 2021 (Fed. Cir. 1987).

Here, petitioner has alleged that its pending application has been refused registration in light of respondent's existing registration. Respondent has admitted such allegation. The rejection of petitioner's trademark application on the basis of the challenged registration is a basis for petitioner's standing. *See Lipton Industries, Inc. v. Ralston Purina Co*., 670 F.2d 1024, 1029, 213 USPQ 185, 189 (CCPA 1982) (to have standing, it is sufficient for petitioner to "prove that it filed an application and that a rejection was made because of [respondent's] registration."). Thus, there exists no genuine issue of material

fact and we find as a matter of law that petitioner has standing in this cancellation proceeding. *See also* TBMP 309.03(b) (2d ed. rev. 2004).

We turn next to the merits of petitioner's fraud claim, and in connection therewith, we must first determine whether petitioner has adequately pled a fraud claim.

At Count II of the amended petition, petitioner alleges, in pertinent part, as follows:

21. On October 31, 2004, Registrant submitted a Statement of Use to the PTO in which Registrant represented to the PTO that it was using the AMC (and design) mark in commerce in connection with automobiles and structural parts thereof. Registrant made this representation to induce the PTO to issue a registration. …

22. On November 18, 2004, Registrant submitted substitute specimens and a Response to Office Action to the PTO in which Registrant represented to the PTO that it was using the AMC (and design) mark in commerce in connection with "automobiles and structural parts thereof." Registrant made this representation to induce the PTO to issue a registration. …

23. On January 22, 2005, Registrant submitted substitute specimens and a Response to Office Action to the PTO in which Registrant represented to the PTO that it was using the AMC (and design) mark in commerce in connection with "automobiles and structural parts thereof." Registrant made this representation to induce the PTO to issue a registration. …

24. As of May 26, 2009, years after Registrant represented to the PTO that it has used the AMC (and design) mark in commerce in connection with automobiles, Registrant, in fact, never offered, advertised, or sold any automobiles under the AMC (and design) mark. (See Registrant's Responses to Petitioner's First Set of Requests for Admission attached as Exhibit D ¶¶3, 5, 6, 8, 15.)

25. As of May 26, 2009, years after Registrant represented to the PTO that it has used the AMC (and design) mark in commerce in connection with structural parts for automobiles, Registrant, in fact, never offered, advertised, or sold any structural parts for automobiles under the AMC (and design) mark. (See Exhibit D ¶¶ 4, 7, 9, 16, 23.)

26. Registrant has never used its AMC (and design) mark in commerce in connection with automobiles.
27. Registrant has explicitly admitted that it has never used its AMC (and design) mark in commerce in connection with structural parts for automobiles.
28. The representations Registrant made to the PTO on October 31, 2004, November 18, 2004, and January 22, 2005 were each false.
29. Respondent knew that the representations were false.
30. Respondent knowingly made material misrepresentations to the PTO to procure Registration No. 2,949,439.
31. The PTO relied on the representations in issuing Registration No. 2,949,439.
32. The PTO would not have issued Registration No. 2,949,439 but for Registrant's false representations.
33. Respondent's actions in the procurement of Registration No. 2,949,439 constitute fraud, thereby invalidating Registration No. 2,949,439. Accordingly, Registration No. 2,949,439 should be cancelled in its entirety.

Fed. R. Civ. P. 9(b) provides that the circumstances constituting the alleged fraud shall be stated with particularity. *See also King Automotive, Inc. v. Speedy Muffler King, Inc.,* 667 F.2d 1008, 212 USPQ 801 (CCPA 1981) ("[t]he pleadings [must] contain explicit rather than implied expressions of the circumstances constituting fraud"). Intent to deceive is an indispensable element of the analysis in a fraud case. *See In re Bose Corporation*, 476 F.3d 1331, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009). As such, intent to deceive the Office, whether to obtain a registration, or to maintain a registration, is also an element to be pleaded in a fraud claim. Nonetheless, intent, as a condition of mind of a person, may be averred generally. Fed. R. Civ. P. 9(b).

5

In this case, petitioner has sufficiently pled a fraud claim, including that respondent had the requisite intent to deceive the USPTO in the procurement of its registration. More specifically, petitioner asserts that respondent knowingly made material misrepresentations to the Office in order to procure the registration. Para. No. 30, *supra*. The allegations preceding and following this assertion state with particularity numerous, specific representations of fact that petitioner alleges were false and were known to be false, were material, and were relied upon by the Office. Further, we find the assertions in para. No. 30, combining the references "material misrepresentations" "knowingly made" and "to procure" a registration, to constitute an allegation of respondent's intent. That is, where a pleading asserts that a known misrepresentation, on a material matter, is made to procure a registration, the element of intent, indispensable to a fraud claim, has been sufficiently pled. Notwithstanding that we find this petition to meet the particularity requirements for pleading fraud and to meet the requirement for generally pleading intent, in light of the *Bose* decision, we note that the preferred practice for a party alleging fraud in a Board opposition or cancellation proceeding is to specifically allege the adverse party's intent to deceive the USPTO, so that there is no question that this indispensable element has been pled.

Having found that petitioner has sufficiently pled a fraud claim, we now determine the merits of the summary judgment motion.

6

In a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A genuine dispute with respect to a material fact exists if sufficient evidence is presented that a reasonable fact finder could decide the question in favor of the non-moving party. *See Opryland USA Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992). Thus, all doubts as to whether any particular factual issues are genuinely in dispute must be resolved in the light most favorable to the non-moving party. *See Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

"[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." Bose, 91 USPQ2d at 1941. *See also Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48, 1 USPQ2d 1483, 1484 (Fed. Cir. 1986). The standard for finding intent to deceive is stricter than the standard for negligence or gross negligence.[5] *See Bose,* 91 USPQ2d at 1941. Deceptive intent may be established by direct evidence or may be inferred from indirect or circumstantial evidence, but no matter the type of evidence, it must be clear and convincing. *Id.*, citing *Star Scientific, Inc. V. R.J.*

---

[5] Still open is the question whether a submission to the PTO with reckless disregard of its truth or falsity would satisfy the intent to deceive requirement. *Bose*, 91 USPQ2d at 1942, fn. 2.

*Reynolds Tobacco Co.*, 537 F3d. 1357, 1366, 88 USPQ2d 1001, 1007 (Fed. Cir. 2008).  There is no fraud if a false representation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive.  *Bose,* 91 USPQ2d at 1940.

Petitioner essentially maintains that respondent has committed fraud because respondent falsely represented in its Statement of Use that it was using the mark in commerce in connection with automobiles and structural parts therefor; and that respondent "knew or should have known" the falsity of its statement.  *See p*etitioner's main brief on its motion, p. 4 and pp. 5-6, relying on *Torres, supra*, and *Medinol Ltd. v. Neuro Vasx, Inc.,* 67 USPQ2d 1205 (TTAB 2003).  More specifically, petitioner noted that *Medinol* held, "[t]he appropriate inquiry is … not into the registrant's subjective intent, but rather into the objective manifestation of that intent," and therefore argued that "it is not necessary to prove intent to commit fraud, but only that a false statement was made."  Brief, p. 6.  Thus, relying on the *Medinol* standard, petitioner introduced with its motion respondent's responses to petitioner's requests for admission Nos. 3-9 and 15, whereby respondent admitted it never sold an automobile or structural parts therefor, as evidence of respondent's false statements.  Respondent, relying on its responses to petitioner's requests for admission Nos. 20 and 22, asserted it made use of its AMC mark in commerce on automobiles, maintains its statements were not false, and that it believed and

continues to believe, that it is using the mark for the identified goods.

As recognized by petitioner in its reply brief, under *Bose*, which issued during the pendency of petitioner's motion for summary judgment, petitioner's reliance on *Medinol* is no longer appropriate.[6] While recognizing, in its reply brief, the change in the law, petitioner did not point to any previously submitted evidence which would meet the *Bose* standard and only tried to distinguish *Bose* from the present case on its facts. At footnote No. 3 of its reply brief, petitioner alternatively asked that, under *Bose*, respondent's registration be restricted "to reflect commercial reality." According to petitioner, such a restriction would require removing all products from the registration, resulting in cancellation of the registration. As a second alternative in the same footnote, petitioner asked that the registration be determined to be void *ab initio* because respondent's mark was not in use in commerce as of the filing date of the Statement of Use. However, petitioner had not asserted these allegations as grounds for cancellation in any pleading. Accordingly, as unpleaded issues, no consideration has

---

[6] The *Medinol* proposition that only objective intent is required to prove a fraud claim is no longer operative. The Court of Appeals for the Federal Circuit, our primary reviewing court, issued the *Bose* decision during the pendency of this motion and made it clear that a plaintiff must prove by clear and convincing evidence that the defendant knowingly made a false statement with the intent to deceive the USPTO. *Bose*, 91 USPQ2d at 1941.

been given to these alternative requests.[7]  *See* Fed. R. Civ. P. 56(a); and TBMP §528.07(a) (2d ed. rev. 2004).

It is clear that under the holding of *Bose* that intent must be separately proved; and on a motion for summary judgment it must be shown that there is no genuine issue about the existence of intent to deceive the Office.

In this case, petitioner has not carried its burden of establishing the absence of a genuine issue of material fact as to respondent's intent to deceive.  More particularly, petitioner has not introduced any direct evidence of respondent's intent to deceive the Office.[8]  Nor has petitioner introduced any indirect or circumstantial evidence which would lead us to the inevitable conclusion (which on summary judgment means the absence of any genuine issue of material fact) that respondent had the intent to deceive the Office, or at least had a reckless disregard for the truth.  As to the falsity of the statements in question, it appears that applicant may not, in fact, be using the mark sufficiently to maintain a registration.[9]  However, petitioner's

---

[7] Moreover, the timing of such alternative requests, *i.e.*, being first presented in petitioner's reply on its summary judgment motion, effectively deprived respondent from any opportunity to respond thereto, because the Board does not permit the filing of surreplies on motions.  37 C.F.R. § 2.127(e)(1).

[8] Petitioner's admission requests, for example, do not seek any admissions regarding the interaction between respondent and the USPTO but, instead, speak only to respondent's own activities regarding use of the involved mark.

[9] The legal proposition being posited by respondent as to its use (*e.g.*, use analogous to trademark use, use in brochures, catalogues and on Internet websites) appears inapposite, but respondent is not represented

motion for summary judgment was only brought on the fraud claim and not on the abandonment claim and the existence of a genuine issue of material fact as to intent precludes granting petitioner judgment on the fraud claim.

We note, too, that questions of intent are typically unsuited to resolution by summary judgment (or other pretrial motions). *See, e.g., Copelands' Enterprises Inc. v. CNV Inc.*, 945 F.2d 1563, 20 USPQ2d 1295, 1299 (Fed. Cir. 1991).

Accordingly, petitioner's motion for summary judgment is denied.

**The schedule is reset**.

Proceedings are resumed.  Dates are reset as follows:

| | |
|---|---|
| Discovery to resume: | February 12, 2010 |
| THE PERIOD FOR DISCOVERY TO CLOSE: | March 15, 2010 |
| 30-day testimony period for party in position of plaintiff to close | June 13, 2010 |
| 30-day testimony period for party in position of defendant to close: | August 12, 2010 |
| 15-day rebuttal testimony period to close: | September 26, 2010 |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.125.

---

by counsel and we need not, for the purpose of deciding the motion for summary judgment, resolve the question.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.

✿✿✿