THIS OPINION IS A
PRECEDENT OF THE
T.T.A.B.

Mailed: May 13, 2009

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

Brown Shoe Company, Inc.
v.
Molly D. Robbins

_____

Opposition No. 91176273
to application Serial No. 78375027
filed on February 26, 2004

_____

Christopher C. Larkin of Seyfarth Shaw LLP for the Brown Shoe Company, Inc.

Austin G. Bosarge of Turning Point Law, Inc. for Molly D. Robbins.

_____

Before Seeherman, Kuhlke and Taylor, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Applicant, Molly D. Robbins, an individual, seeks registration of the mark PALOMITA, in standard character form, for goods identified in the application as "shirts, pants, shoes and hats" in International Class 25.[1]

---

[1] Serial No. 78375027, filed February 26, 2004, alleging a bona fide intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b).

Opposer, the Brown Shoe Company, Inc., has opposed registration of applicant's mark on the ground that, as applied to applicant's goods, the mark so resembles opposer's previously used and registered PALOMA and PALOMA and design marks, for various clothing and footwear such that "customers and the relevant trade would likely be confused as to the source, sponsorship, or affiliation of such goods." 15 U.S.C. §1052(d). In addition, opposer asserts a claim of fraudulent misuse of the federal registration symbol.

Applicant has filed an answer by which she has denied the salient allegations.[2]

The evidence of record consists of the pleadings herein and the file of the opposed application. In addition, opposer submitted the following material under a notice of reliance: certified copies of opposer's pleaded registrations, which show that the registrations are subsisting and owned by opposer; and applicant's responses to certain of opposer's interrogatories and requests for admission. Opposer did not take any testimony. Applicant did not take any testimony or file a notice of reliance. Both parties filed briefs.

---

[2] Applicant's counterclaim to cancel opposer's pleaded registrations was dismissed on October 10, 2008 for failure to prosecute. Applicant's "affirmative defenses" are merely amplifications of her denial of opposer's claims.

2

### PRIORITY AND LIKELIHOOD OF CONFUSION

The pleaded registrations made of record, which are in full force and effect and are owned by opposer, are summarized as follows:

> Registration No. 2993403 for the mark PALOMA (in typed form) for "clothing, namely, belts, shirts, blouses, pants, dresses, skirts, shorts, jackets, coats, undergarments, footwear, hosiery and headwear" in International Class 25, filed April 2, 2002 and issued on September 6, 2005, with the following translation statement, "The foreign wording in the mark translates into English as dove"; and

> Registration No. 3100693 for the mark
> for "shoes" in International Class 25, filed June 23, 2005 and issued on June 6, 2006, with the following translation statement, "The foreign wording in the mark translates into English as dove."

Because opposer has made the pleaded registrations summarized above properly of record, opposer has established its standing to oppose registration of applicant's mark and its priority is not in issue. See King Candy Co., Inc. v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours and Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co.,

3

Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). Two key considerations are the similarities between the marks and the similarities between the goods. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

In considering the factors, we have limited our determination of likelihood of confusion to the most relevant registration, Registration No. 2993403 for the mark PALOMA (in typed form) for "clothing, namely, belts, shirts, blouses, pants, dresses, skirts, shorts, jackets, coats, undergarments, footwear, hosiery and headwear."

With regard to the goods, the "shirts and pants" identified in opposer's Registration No. 2993403 are identical to applicant's identified "shirts and pants" and the "footwear and headwear" identified in the registration. 2993403 encompass applicant's identified "shoes and hats."

Considering the channels of trade and classes of purchasers, because the goods are, in part, legally identical and otherwise closely related and because there are no limitations in either the registration or the subject application, we must presume that applicant's and opposer's goods will be sold in the same channels of trade and will be bought by the same classes of purchasers. See Hewlett-Packard Co. v. Packard Press Inc., 281 F.3d 1261, 62 USPQ2d

1001 (Fed. Cir. 2002); Canadian Imperial Bank v. Wells Fargo Bank, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987); and In re Smith and Mehaffey, 31 USPQ2d 1531 (TTAB 1994).[3]

In view of the above, the du Pont factors of the similarity of the goods, the channels of trade and classes of purchasers favor a finding of likelihood of confusion.

With regard to the conditions of sale, these goods include general clothing items that would not be purchased with a great deal of care or require purchaser sophistication, which increases the likelihood of confusion. See Recot Inc. v. M.C. Becton, 214 F.3d 1322, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000) ("When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care") (citations omitted). Thus, this factor also favors opposer.

We now turn to consider the similarity or dissimilarity of the marks when compared in their entireties in terms of appearance, sound, connotation and commercial impression. We make this determination in accordance with the following

---

[3] Applicant's argument that opposer presented no evidence of actual usage of the goods or of the actual channels of trade is misplaced. As noted above, where the goods are identical, as the record establishes and applicant acknowledges (App. Br. p. 7), we must presume overlapping trade channels and classes of purchasers.

principles. The test, under this du Pont factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impressions that confusion as to the source of the goods offered under the respective marks is likely to result. Moreover, where the goods are identical "the degree of similarity [between the marks] necessary to support a conclusion of likely confusion declines." Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 877, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992), cert. denied, 506 U.S. 1034 (1992).

In comparing the marks PALOMA and PALOMITA within the above-noted legal parameters, we find the points of similarity outweigh the dissimilarities. ESSO Standard Oil Co. v. Sun Oil Co., 229 F.2d 37, 108 USPQ 161, 163 (D.C. Cir. 1956). The marks are very similar in sound and appearance, differing only in the ending by the addition of the letters "IT" in applicant's mark. As opposer notes, it is the first portion of a mark that is more likely to make an impression on potential purchasers and here the beginning and core elements of the words are the same. See Hercules Inc. v. National Starch & Chemical Corp., 223 USPQ 1244, 1246 (TTAB 1984) ("considering the marks NATROL and NATROSOL in their entireties, the clearly dominant aspect of both

6

marks is that the first four letters and the final two are the same"). See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); Presto Products Inc. v. Nice-Pak Products Inc., 9 USPQ2d 1895, 1897 (TTAB 1988).

Both parties apply the doctrine of foreign equivalents in comparing the connotation and commercial impression of the respective marks. Applicant argues that the doctrine should not apply in this case, but in the alternative, applicant argues that the words have different meanings in Spanish and this difference in connotation is sufficient to avoid confusion. Opposer takes objection to applicant's translation and argues that under the doctrine of foreign equivalents these words have similar meanings.

The evidence of record establishes that PALOMA is a Spanish word with the English translation of "dove," and PALOMITA is the diminutive of the word PALOMA in the Spanish language, meaning "little dove." See App. Responses to Opp. Requests for Admissions Nos. 79, 80, 82, 84-85. Applicant asserts that PALOMITA has additional meanings in Spanish, namely, "checkmark" and "popcorn." During prosecution applicant provided the translation of PALOMITA as "checkmark." However, while the application is of record, the allegations in the application are not facts and must be proven during trial. Although applicant did not take any

testimony or file notices of reliance, applicant's request

that we take judicial notice of the following translation is

granted:[4]

> Palomita sustantivo femenino (Mex fam) (marca)
> check (AmWE), tick (BrE);
>
> Palomitas sustantivo femenino plural:  tb ~s de
> maiz popcorn.

Pocket Oxford Spanish Dictionary (Oxford University Press

2005).

The doctrine of foreign equivalents is normally applied

where one mark is in a foreign language, and the other mark

is in English.  In general, the Board does not apply the

doctrine of foreign equivalents in cases where both marks

are non-English words from two different languages.  See

Safeway Stores Inc. v. Bel Canto Fancy Foods Ltd., 5 USPQ2d

1980, 1982 (TTAB 1987) (French expression "bel air" v.

Italian expression "bel aria").  But see Miguel Torres S.A.

v. Casa Vinicola Gerardo Cesari S.R.L., 49 USPQ2d 2018,

2020-2021 (TTAB 1998), vacated on other grounds, 230 F.3d

1372 (Fed. Cir. 1999).  We do not think the circumstances

present in this case warrant application of the doctrine.

Here, where both marks are Spanish words we must consider

the connotation of the marks to both non-Spanish-speaking

consumers and to Spanish-speaking consumers.

---

[4] University of Notre Dame du Lac v. J.C. Gourmet Food Imports
Co., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505
(Fed. Cir. 1983).

In English the words have no meaning and therefore, although non-Spanish-speaking consumers would not understand the words, because of the similarity in appearance and pronunciation the marks likely would be perceived as having similar meanings.[5]  Applicant herself has stated that, "a purchaser in the United States, who is unlikely familiar with the translations of Opposer's and Applicant's marks, will view the marks as having the same meaning."  App. Br. p. 7.  Thus, a substantial portion of the purchasing public would not understand the possible differences in meaning asserted by applicant.  Therefore, even if we were to accept the translation applicant proposes, this is not sufficient to distinguish the marks with respect to non-Spanish speakers.

As for Spanish-speaking consumers, even if they were to understand the multiple meanings of PALOMITA, it is clear that one meaning of the term is "little dove," and there is nothing inherent in the goods that would lead a consumer to the "checkmark" or "popcorn" meanings over the "little dove" connotation.  Applicant's argument that she displays her mark with a "checkmark" serving as the "I" in PALOMITA is unavailing inasmuch as we must make our determination based

---

[5] Opposer argues that even non-Spanish speakers would recognize the suffix "ITA" in applicant's mark as merely indicating a diminutive form of the word PALOMA; however, there is no evidence of record to support this argument.

9

on the marks as depicted in the application and registration. In this case, applicant has applied for a standard character mark without a checkmark design, and the registrant's mark is in typed form; therefore, our analysis may not be limited to any particular manner of display. In re Pollio Dairy Products Corp., 8 USPQ2d 2012, 2015 (TTAB 1988) (rights reside in the word and not in any particular form of the mark); and Sunnen Products Co. v. Sunex International Inc., 1 USPQ2d 1744, 1747 (TTAB 1987) (applicant seeks registration without special form or design, therefore Board must evaluate marks on premise that it may be displayed in any form or style of lettering).

We find that the marks overall are substantially similar in appearance, pronunciation, meaning and commercial impression, and that the similarities outweigh the minor difference in the endings. We conclude that this factor favors opposer.

Finally, applicant's argument that there is no evidence of actual confusion despite "opposer's allegations that applicant has been using the mark in connection with the promotion or sale of goods" is not persuasive. First, there is nothing in the record upon which to make findings of the extent of concurrent use and the opportunity for confusion to occur. Second, the test is likelihood of confusion and the absence of evidence of actual confusion alone is not

particularly probative.  Weiss Ass. Inc. v. HRL Ass. Inc., 902 F.2d 1546, 1549, 14 USPQ2d 1840, 1842-43 (Fed. Cir. 1990).

Thus, we conclude that the evidence of record as it pertains to the relevant du Pont factors supports a determination of likelihood of confusion as between applicant's PALOMITA mark and opposer's PALOMA mark, such that registration of applicant's mark is barred under Trademark Act Section 2(d).  As noted above, applicant has not submitted any evidence or taken any testimony to rebut opposer's showing.

We now turn to opposer's second claim of fraudulent misuse of the registration symbol.  We begin by noting that "it has been the practice of the Office to accept explanations that demonstrate that such use was inadvertent or without any intent to deceive or mislead and that there has been an effort to discontinue the offending use." Knorr-Nahrmittel Aktiengesellschaft v. Havland International, Inc., 206 USPQ 827, 833 (TTAB 1980) citing S.C. Johnson & Son, Inc. v. Gold Seal Co., 90 USPQ 373 (Comm'r 1951).  Mistake or inadvertence generally overcomes a claim of fraudulent misuse.  See J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §19:146 (4th ed. updated 2009).

Opposer contends that applicant's admissions that "she knew that her 'PALOMITA' mark was not registered in the United States when she created, approved, and made each of these misuses of the symbol and that such uses signified that the 'PALOMITA' mark was registered in the United States" are sufficient for a finding of fraudulent misuse.

Opposer argues that "Applicant did not take any testimony or make any other evidence of record, so there is no evidence of record, beyond Applicant's unsworn statements in her discovery responses, of the existence of any Mexican registration, no evidence of record that any such registration covers the goods identified in the opposed application, and no evidence of record that Mexican law permits the use of the ® symbol." Opp. Br. p. 14.

To prove its claim, opposer submitted and relied on applicant's responses to interrogatories and requests for admission which include the following:

> Interrogatory No. 4: State in detail what Applicant understood regarding the proper and improper use of the Registration Symbol next to a trademark when Applicant first used the Registration Symbol next to Applicant's Mark, explain how and when Applicant came to have that understanding, and state whether Applicant's understanding has ever changed and, if so how it has changed.
>
> Response: Applicant understood that the Registration Symbol next to a trademark could be used when such trademark is registered. Applicant's Mark is a registered trademark in Mexico and Applicant understood she could properly use the Registration Symbol next to Applicant's

12

Mark because of such registration. Applicant was made aware of the possible improper use of the Registration Symbol upon Opposer's amended Notice of Opposition. Counsel for Applicant advised Applicant to consider removing the Registration Symbol until this Opposition was resolved, even though use of the Registration symbol may be entirely proper.

Request No. 11: Applicant approved the use of the Registration Symbol in the circular design shown in Exhibit 1.

Response: Applicant admits Request No. 11, in that Applicant's Mark is a registered trademark in Mexico entitling Applicant to use the Circle R Registration Symbol next to Applicant's Mark. Applicant denies the request to the extent it makes the unwarranted inference that Applicant intended to misrepresent Applicant's mark as being registered in the United States.

Request No. 13: When the circular design shown in Exhibit I was approved by Applicant, Applicant knew that the use of the Registration Symbol next to a trademark in the United States signifies that the trademark is registered in the United States.

Response: Applicant admits Request No. 13 in that Applicant's Mark is a registered trademark in Mexico entitling Applicant to use the Circle R Registration Symbol next to Applicant's Mark; Applicant denies the request to the extent it makes the unwarranted inference that Applicant intended to misrepresent Applicant's mark as being registered in the United States.

Opp. NOR III and IV.

Opposer relies heavily on Copelands' Enterprises Inc. v. CNV Inc., 20 USPQ2d 1295 (Fed. Cir. 1991). However, in that case the defendant had notified plaintiff that the mark was federally registered when it was only the subject of a pending application. In addition, defendant did not respond to a letter from plaintiff pointing out the improper usage

13

and demanding cessation of such activities and continued improper use of the registration symbol. Most importantly, that decision was on summary judgment and the Federal Circuit in remanding the case stated that "the factual question of intent is particularly unsuited to disposition on summary judgment" and that "the sequence of events here raises serious questions as to [defendant's] purpose and intent in using the registration notice, and more importantly, continuing to use it after being specifically notified of the impropriety of such use." Id. at 1299.

Here, applicant, based on her admissions, believed her use to be proper inasmuch as she had registered the mark in Mexico. Applicant may rely on her discovery responses, inasmuch as opposer has placed these responses into the record under notice of reliance and relied on them in support of its case. Trademark Rule 2.120(j)(7). Moreover, the only "specific notification" was the amended notice of opposition and applicant ceased use of the symbol after receipt of the amended complaint.

Opposer also relies on Section 906.01 of the Trademark Manual of Examining Procedure (TMEP) (5th ed. 2007). This section provides that, "When a foreign applicant's use of the symbol on the specimens is based on a registration in a foreign country, the use is appropriate." While this same section does not list Mexico as one of the countries that

14

uses this symbol, we find this is insufficient to prove that Mexico does not use this symbol; there is nothing in the record to indicate that the TMEP section contains an exhaustive list or that it accurately reflects Mexican law at the time applicant used the registration symbol. Further, even if Mexico does not provide for the use of this symbol, there is no proof that applicant knew this and intended to deceive by using the symbol. In addition, there is no proof that applicant distributed hang tags with this symbol in the United States and applicant's use on a website that can be accessed from anywhere in the world, including Mexico, does not by itself amount to fraudulent misuse.

The circumstances in the case before us are more akin to those presented in The Du-Dad Lure Co. v. Creme Lure Co., 143 USPQ 358 (TTAB 1964), where a mistaken belief that state registration of a trademark entitled use of the registration symbol did not constitute fraud or misrepresentation, and Shatel Corp. v. Mao Ta Lumber and Yacht Corp., 697 F.2d 1352 (11TH Cir. 1983), where belief that foreign registrations entitled use of a registration symbol in a magazine that would be distributed in countries where the mark was registered did not constitute a fraudulent misrepresentation. More importantly, upon learning of the possible misuse through opposer's addition of the fraud claim, applicant ceased using the symbol. Based on this

15

record, opposer did not prove its claim of fraudulent misuse.

**Decision:** The opposition is sustained as to opposer's claim of priority and likelihood of confusion under Section 2(d) of the Trademark Act and dismissed as to the claim of fraudulent misuse.