This Opinion is a Precedent
of the TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451
General Contact Number: 571-272-8500

DUNN

Mailed: January 21, 2016

Opposition No.   91197762
Cancellation No. 92055153

*Embarcadero Technologies, Inc.*

*v.*

*Delphix Corp.*

(as consolidated)

Before Quinn, Mermelstein and Lykos, Administrative Trademark Judges:

By the Board:

This case comes up on Respondent's motion for summary judgment in Cancellation No. 92055153 on the pleaded claim that Respondent fraudulently averred use in commerce of its DELPHIX mark prior to registration. We also address Petitioner's cross-motion to amend its petition for cancellation to add various claims, including the related claim that the application underlying the subject registration was void for nonuse prior to registration. Both motions are contested.

On January 14, 2009, Respondent filed an application based on Trademark Act Section 1(b), 15 U.S.C. § 1051(b), to register the mark shown below



for "computer software for use in database management; database management software for managing database storage and provisioning functions" in International Class 9 (application Serial No. 77649689). On August 12, 2009, Respondent filed its statement of use alleging January 31, 2009 as its date of first use of the mark and March 1, 2009 as its date of first use of the mark in commerce.

On October 1, 2009, the USPTO issued an Office action finding Respondent's specimen of use unacceptable. On January 25, 2010 — within six months of issuance of the notice of allowance — Respondent timely filed a request for an extension of time to file the statement of use for six months, or until July 28, 2010. On February 3, 2010, Respondent filed its response to the Office action, with an accompanying substitute specimen and declaration averring that the substitute specimen was in use in commerce prior to the expiration of the original filing deadline for filing the statement of use. Respondent continued to allege January 31, 2009 as the date of first use of the mark, and substituted December 3, 2009 as its date of first use of the mark in commerce. On February 24, 2010, the USPTO issued a notice of acceptance of Respondent's statement of use. Registration No. 3768914 issued March 30, 2010.

On February 9, 2012, Petitioner filed its petition to cancel Registration No. 3768914 pleading, among other claims, fraud based on Respondent's averment of use in its statement of use.

Respondent filed an answer denying the salient allegations of the petition, and pleading various affirmative defenses. Pursuant to the Board's July 26, 2013 order granting the parties' consented scheduling motion, discovery closed December 21, 2013. Respondent filed its motion for summary judgment on August 11, 2014, prior to the opening of Petitioner's testimony period.[1]

RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ON FRAUD

Summary judgment is an appropriate method of disposing of cases in which there is no genuine dispute with respect to any material fact, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c)(1). A party moving for summary judgment has the burden of demonstrating the absence of any genuine dispute as to a material fact, and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence of record and all justifiable inferences that may be drawn from the undisputed facts must be viewed in the light most favorable to the non-moving party. *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993).

---

[1] Proceedings were suspended, by consent of the parties, for about a year to allow settlement discussions and, pursuant to the Board's May 21, 2014 order granting the parties' scheduling motion, resumed with Petitioner's testimony period scheduled to open August 19, 2014.

When a moving party's motion for summary judgment is supported by evidence sufficient to indicate that there is no genuine dispute as to any material fact and the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute regarding at least one material fact which requires resolution at trial. The nonmoving party, however, may not rest on the mere allegations of its pleadings and assertions, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine dispute as to a material fact for trial. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.3d 831, 221 USPQ 561, 564 (Fed. Cir. 1984) ("The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant.").

Moreover, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file" and "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. at 324. That is, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. at 325; *Copelands' Enters. Inc. v. CNV Inc.*, 945 F.2d 1563, 20 USPQ2d 1295, 1298 (Fed. Cir. 1991).

Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with its application with the intent to deceive the USPTO. *In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009). The standard for finding intent to deceive is stricter than the standard for negligence or gross negligence, and evidence of deceptive intent must be clear and convincing. *Id*.

Respondent moves for summary judgment on Petitioner's fraud claim, contending that, even if there was an inaccuracy in the statement of use, there is no evidence that the inaccuracy resulted from an intent to deceive the USPTO. Respondent argues that Petitioner's initial disclosures and pretrial disclosures identify no documents or witnesses with knowledge of facts supporting a fraud claim, and that Petitioner "has not produced a single document, witness, or discovery response" supporting its fraud claim.

Respondent submits the declaration of its CEO and founder, Jedidiah Yueh, who avers that he created a unique software product and used the mark in accordance with industry practice; that Respondent first installed the software bearing the mark for a customer in December 2009; that at another unspecified point in 2009, Respondent installed the DELPHIX software; that the mark was also used on a user manual provided to both customers in 2009, and then the manual was submitted as a specimen supporting Respondent's amended statement of use; that he signed the amendment to the statement of use; that because the manual was in use with software installed for customers, he believed then and still believes that

Respondent used the mark in commerce as of December 3, 2009; that Respondent had ten customers by September 2010, and that customer testimonials were part of Respondent's presentation at a September 2010 trade conference.

Respondent also submits its September 2010 press release describing existing customers for the DELPHIX software, and excerpts from Mr. Yueh's discovery deposition in which he avers Respondent was the first company to offer database virtualization, a concept invented by Mr. Yueh and the subject of patent applications; that even now no other companies offer the type of database virtualization solution that Respondent offers; and that the September 2010 presentation at the trade conference was intended to increase Respondent's customer base.[2]

To support its opposition to the motion for summary judgment, Petitioner submits Respondent's responses to Petitioner's request for the production of documents, the declaration of attorney Angelique Riordan, and excerpts from the Yueh deposition. The Riordan declaration avers that Respondent's document production includes no sales documents such as purchase orders or shipment confirmations of Respondent DELPHIX software. The excerpts from the Yueh deposition state that Yueh is a graduate of Harvard University, that before founding Respondent, he was the founder of a different company with general

---

[2] Petitioner moves (Opposition to Motion for Summary Judgment, p. 1 fn. 1) to strike the Yueh deposition pursuant to Fed. R. Civ. P. 32. Inasmuch as Trademark Rule 2.127(e)(2) specifies that "For purposes of summary judgment only, the Board will consider … a discovery deposition or any part thereof with any exhibit to the part that is filed", the motion is denied. However, had the deposition evidence been stricken, we would come to the same result on this motion.

responsibilities for marketing and trademarks; and that he selected the prior company's trademark and sought to register it. With respect to Respondent's fraudulent intent in filing its statement of use, Petitioner contends (Response, p. 10):

> Delphix's president and CEO Jedidiah Yueh appears to have been acting pro se when he signed and submitted both Statements of Use. That fact makes no difference – an applicant is responsible for ensuring that accurate information is transmitted to the USPTO. Mr. Yueh is a highly educated Harvard graduate, who has started at least two businesses, with previous trademark experience. Mr. Yueh is well aware of the importance of reading and verifying the accuracy of documents he signs. With his extensive business experience, including trademark responsibilities and previous dealings with USPTO and the filing of trademark applications, Mr. Yueh could not have reasonably believed that Delphix's two claimed "installations" constituted use in commerce of software goods.

Respondent filed a reply brief noting that Petitioner relies on only two facts about Respondent's CEO – that Mr. Yueh studied at Harvard and has a general awareness of trademarks – to inappropriately infer that Respondent filed its statement of use with the necessary fraudulent intent. Respondent contends that it has discharged its burden for summary judgment by showing that there is an absence of evidence to support Petitioner's claim.

While the Board must view Respondent's motion for summary judgment on Petitioner's pleaded claim of fraud in a light most favorable to Petitioner as the non-moving party, Petitioner was required to set forth specific facts, by declarations or as otherwise provided in the rule, evidence supporting an inference of Respondent's fraudulent intent in declaring that it was using its DELPHIX mark on the software

in commerce, and showing that there are genuine disputed facts remaining for trial. *See* Fed. R. Civ. P. 56(e). *See also Copelands' Enters. Inc.,* 20 USPQ2d at 1298, and *Octocom Sys. Inc. v. Houston Computers Servs. Inc.,* 918 F.2d 937, 16 USPQ2d 1783, 1786 (Fed. Cir. 1990). Here, Petitioner failed to rebut Respondent's evidence or raise a genuine dispute of material fact regarding Respondent's intent to deceive USPTO. *In re Bose Corp.,* 580 F.3d 1240; 91 USPQ2d 1938, 1942 (Fed. Cir. 2009) (Board erred in finding Sullivan's belief that the mark was in use in commerce was not reasonable, court holding "We do not need to resolve the issue of the reasonableness as it is not part of the analysis. There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive."); *M.C.I. Foods Inc. v. Bunte,* 96 USPQ2d 1544, 1549 (TTAB 2010) ("we will not draw an inference that MCI acted with the intent to deceive the Trademark Office without some factual basis for drawing such an inference"). *Compare Copelands' Enters. Inc.,* 20 USPQ2d at 1299 ("Although purporting to explain its actions, CNV's self-serving declarations are insufficient in the context of summary judgment <u>to overcome other evidence</u> of deceptive use of the registration symbol.") (emphasis added). Testimony regarding the education and trademark experience of Respondent's CEO who signed the statement of use is not evidence, direct or indirect, of fraudulent intent, a necessary element of the fraud claim. Accordingly, Respondent's motion for summary judgment on the ground of fraud is GRANTED.

This decision is interlocutory in nature. Appeal may be taken within two months after the entry of a final decision resolving the remaining issues in the case.

PETITIONER'S MOTION TO AMEND THE PETITION TO CANCEL

Trademark Rule 2.115, 37 C.F.R. § 2.115, and Fed. R. Civ. P. 15(a) encourage the Board to look favorably on motions to amend pleadings, stating that "leave shall be freely given when justice so requires." In deciding whether to grant leave to amend, the Board may consider undue delay, prejudice to the opposing party, bad faith or dilatory motive, futility of the amendment, and whether the party has previously amended its pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962*); Am. Express Mktg. & Dev. Corp. v. Gilad Dev. Corp.*, 94 USPQ2d 1294, 1297 (TTAB 2010). In determining whether the other party would be prejudiced by allowance of the proposed amendment, the timing of the motion for leave to amend plays a large role. *Black & Decker Corp. v. Emerson Electric Co.,* 84 USPQ2d 1482, 1486 (TTAB 2007).

In support of its motion to amend its petition for cancellation, Petitioner contends that the accompanying amended petition to cancel does not include any new, previously unasserted claims; that the original petition to cancel pleaded claims of false suggestion of a connection, likelihood of confusion, and fraud, and provided ample notice of all claims now clarified in the amended petition; that the fraud claim includes allegations sufficient to plead the additional independent claims of nonuse and "false declaration"; that existing law acknowledges that a fraud claim based on nonuse also includes a separate nonuse claim; and that there will be no prejudice to Respondent in granting the amendment inasmuch as no

discovery is necessary.[3] Respondent contends that amendment should be denied because Petitioner unduly delayed in bringing its motion to amend, and because the proposed amended petition to cancel includes new and futile claims beyond the scope of the original pleading.

Because the claims are untimely and futile, the motion to amend is denied with respect to the claims of false suggestion of a connection and "false declaration." While the ESTTA cover sheet of the original petition to cancel listed false suggestion of a connection under Trademark Act Section 2(a), 15 U.S.C. § 1052(a), as a ground for cancellation, the Board's April 29, 2013 order found that the claim was not supported by any factual allegations, and held that no consideration would be given to the claim. Petitioner did not seek reconsideration of that order. To the extent that Petitioner alleges that its May 26, 2015 proposed amended petition clarifies an existing claim, the Board disagrees. There is no claim of false suggestion of a connection to clarify, and so we consider this the proposed addition as the addition of a new claim.

In any event, the proposed claim of false suggestion of a connection would be futile. The claim of false suggestion of a connection is not a variation on a likelihood of confusion claim. As Petitioner was previously informed, a sufficient claim requires allegations that Respondent's DELPHIX mark is Petitioner Embarcadero Technologies, Inc.'s identity or "persona," and Petitioner's allegations regarding the

---

[3] The proposed amended petition to cancel no longer pleads that Respondent lacked a *bona fide* intent to use the mark in commerce when the application underlying its registration was filed. We therefore consider that claim to be withdrawn.

similarities between the parties' marks fall far short of this standard. *See Hornby v. TJX Cos., Inc.*, 87 USPQ2d 1411, 1424 (TTAB 2008).

The proposed amended petition also is futile with respect to the claim of "false representation." There is no statutory claim for cancellation based on "false representation." And, as discussed, a cancellation claim that the registration "was obtained fraudulently" requires more than a false representation; it requires, *inter alia*, that the false representation be accompanied by deceptive intent. *Daimlerchrysler Corp. and Chrysler, LLC v. Am. Motors Corp.*, 94 USPQ2d 1086, 1089 (TTAB 2010) (citing *Bose*, 91 USPQ2d at 1942 ("There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive.")). Petitioner's proposed claim of "false representation" therefore fails to state a claim.

The Board comes to a different result with the proposed new claim of nonuse, which Respondent has not shown will necessarily be futile. The petition to cancel alleges (Par. 20) that "[b]ased on the results of due investigation, the physical appearance of the specimen documents available for Reg. No. 3,768,914 and the public notices regarding the launch date of the actual product under the DELPHIX (Logo) mark, such mark was not in bona fide commercial use in commerce at the time of filing the Statement of Use and/or at the time of filing the substitute/new specimen of use …," and this allegation is sufficient notice to Respondent that its use at the time the statement of use was filed was at issue. *See ShutEmDown Sports, Inc. v. Carl Dean Lacy*, 102 USPQ2d 1036, 1045 (TTAB 2012) ("the petition

for cancellation clearly put Respondent on notice that petitioner had alleged nonuse by Respondent, in particular, 'on all recited goods at the time of the application.' … [S]eparate pleading of a non-use claim, while preferable, is not, however, critical, and the Board has found applications to be void ab initio even when nonuse was not pleaded as a separate claim or issue.") (citations omitted).

Petitioner did not unnecessarily delay in seeking to add the separate nonuse claim. Proceedings largely were suspended from issuance of the Board's April 29, 2013 order, which held that the petition to cancel did not expressly plead a separate claim of nonuse, until the instant motion for summary judgment was filed. Further, under *ShutEmDown Sports*, the Board could have considered evidence of nonuse without requiring a separate pleading. Accordingly, there is no prejudice in allowing a separate pleaded claim of nonuse.

But although Petitioner's nonuse claim is timely, it is nonetheless based on a faulty legal premise. Petitioner pleads that because Respondent filed its statement of use on August 12, 2009, Respondent could not later substitute or amend dates of use which occurred after August 12, 2009, and that Respondent's subsequent amendment to its statement of use was an impermissible withdrawal of the statement of use. Accordingly, we review the existing rules allowing applicants to submit evidence of use which occurred after the filing of the statement of use but within the original or extended period for filing the statement of use, and hold that, in an *inter partes* proceeding, the Board also will consider evidence of use which

occurred after the filing of the statement of use but within the original or extended period for filing the statement of use.

During *ex parte* examination, the actual filing of a statement of use does not cut off the deadline for meeting the requirements for a statement of use. The applicant may amend its statement of use so long as the amendment demonstrates that the requirements for the statement of use were met before the expiration of the deadline for filing the statement of use. Trademark Rule 2.88(e), 37 C.F.R. § 2.88(e) ("If, as a result of the examination of the statement of use, the applicant is found not entitled to registration, the applicant will be notified and advised of the reasons and of any formal requirements or refusals. The statement of use may be amended in accordance with §§ 2.59 and 2.71 through 2.75."). Thus, an applicant may amend its statement of use to state dates of use which fall *after* the statement of use filing date, but *before* the expiration of the deadline for filing the statement of use. *See* Trademark Rule 2.71(c)(2), 37 C.F.R. § 2.71(c)(2) ("The applicant may amend the dates of use, provided that the amendment is verified, except … after filing a statement of use under § 2.88, the applicant may not amend the statement of use to specify a date of use that is subsequent to the expiration of the deadline for filing the statement of use.").[4]

---

[4] For example, if the deadline for filing the statement of use expires September 13, 2016, and if the statement of use is filed on September 13, 2016, and alleges August 13, 2016 as the dates of first use; and if an Office action finding that the specimen of use does not demonstrate trademark use issues October 13, 2016, giving the applicant until April 12, 2017 to respond; then the applicant may file a response on April 12, 2017 which amends the statement of use to include a new date of use of September 13, 2016. The applicant may not file a response on April 12, 2017 which amends the statement of use to include a new date

An applicant which has filed its statement of use also may extend its deadline for meeting statement of use requirements by seeking an extension of time. Trademark Rule 2.89(e), 37 C.F.R. § 2.89(e), and Trademark Manual of Examining Procedure ("TMEP") § 1108.03 (Oct. 2015).[5] This so-called "insurance" extension may be filed either with or after the statement of use, so long as it is filed before the expiration of the current deadline for filing the statement of use. The insurance extension varies from other statement of use extensions because it is the last available extension of time.[6] Trademark Rule 2.89(e)(1), 37 C.F.R. § 2.89(e)(1); *In re Dell*, 71 USPQ2d 1725, 1726 (TTAB 2004) ("Because this fifth extension was filed after the 'insurance' fourth extension request, the Examining Attorney advised applicant that the fifth extension was not allowed, and therefore that any specimen which was used after the expiration of the fourth extension was not acceptable."). As a result, if an applicant files a statement of use and an insurance extension the day after the notice of allowance issues, and the extension meets the relevant requirements, the applicant will have almost a year (the remainder of the six months following issuance of the notice of allowance plus the six months provided

---

of use of September 14, 2016, a date which falls after the expiration of the deadline for filing the statement of use, or to submit a substitute specimen of use that was first used on September 14, 2015.

[5] *See also In re Dermahose Inc.*, 82 USPQ2d 1793, 1795 (TTAB 2007); *In re Informix Software Inc.*, 32 USPQ2d 1861, 1862 (Comm'r 1993).

[6] Prior to the filing of a statement of use, an applicant may request extensions of time in six month increments, so long as the total time available for filing the statement of use is not extended beyond thirty-six months from the issuance date of the notice of allowance. Trademark Rule 2.89(a)-(d), 37 C.F.R. § 2.89(a)-(d). Once the statement of use is filed, an applicant is limited to one further (insurance) extension. Trademark Rule 2.89(e), 37 C.F.R. § 2.89(e).

by the insurance extension) in which to meet the requirements for a statement of use.[7]

Here, the notice of allowance for Respondent's application issued July 28, 2009 and required Respondent to file a statement of use, or to seek an extension of time to do so, within six months (that is, by January 28, 2010). On August 12, 2009, Respondent filed its statement of use, and on January 25, 2010 — within six months of issuance of the notice of allowance — Respondent timely filed a request for an insurance extension of time for six months, or until July 28, 2010, in which to file the statement of use. With this request Respondent submitted the required fee and verification. No more is required for a first statement of use extension, including an insurance extension that is the first requested extension under the facts of a case. *See* Trademark Rule 2.89, 37 C.F.R. § 2.89.

We find that giving Respondent the benefit of the insurance extension in this proceeding satisfies the letter and the spirit of the statement of use rules, which allow amendment of the statement of use by an applicant who has preserved its time to make such amendments. It may be the rare case in which the extension

---

[7] To illustrate, if the notice of allowance issues May 3, 2016, and the applicant files its statement of use and meets all the requirements for an insurance extension on May 4, 2016 (the next day), making May 3, 2017 the deadline for filing the statement of use; and if the statement of use alleges February 5, 2016 as the date of first use, and if an Office Action issues May 4, 2016 finding that the specimen of use does not demonstrate trademark use, then the applicant may file a response by November 4, 2016 with a new specimen and alleging November 4, 2016 as its new date of first use, a date which falls before the May 3, 2017 expiration of the deadline for filing the statement of use. In fact, if a final Office action issues finding that the substitute statement of use specimen does not demonstrate trademark use, the applicant may respond with a new specimen and alleging May 3, 2017 as its new dates of use, a date which falls before the May 3, 2017 expiration of the deadline for filing the statement of use.

makes a difference as to whether the applicant can demonstrate proper trademark use in an *inter partes* proceeding. Nonetheless, it is clear that the insurance extension request was not acted upon because the USPTO found that Respondent's amended statement of use addressed the deficiency raised by the Examining Attorney. *See* TMEP § 1108.03(a) ("If the examining attorney does not issue a requirement or refusal based on the statement of use, the USPTO will not take formal action on the extension request."). If the USPTO had found that applicant's amended statement of use did not address the deficiency, Respondent's extension would have been granted under the applicable rules, allowing Respondent an additional six-month period in which to begin use and meet the statement of use requirement for alleging dates of first use.[8] To be clear, the issue before the Board is not whether the USPTO erred in accepting Respondent's amended statement of use, but whether Respondent actually used its mark in commerce prior to the expiration of its time for doing so. *See Marshall Field & Co. v. Mrs. Fields Cookies*, 11 USPQ2d 1355, 1358-59 (TTAB 1989).

Accordingly, the Board finds that Respondent is entitled to the benefit of the insurance extension and, to be legally sufficient, any nonuse claim that Petitioner may submit must plead that Respondent did not use the DELPHIX mark with the

---

[8] We hasten to add that we see no error in the *ex parte* examination of Respondent's statement of use, or the policy of taking no action with respect to requests for the insurance extension which are unnecessary to meet the requirements for a statement of use. We merely explain our reasoning why we believe Respondent to be entitled to the benefit of the insurance extension, which had not been explicitly granted.

software listed in the registration within the time for filing its statement of use as extended, *i.e.*, no later than July 28, 2010.

In sum, Petitioner's motion to amend the petition to cancel is GRANTED inasmuch as the Board will allow Petitioner FIFTEEN DAYS from the mailing date of this order to file a second amended petition to cancel in which Petitioner restates its existing claim of priority of use and likelihood of confusion, and adds the separate claim of nonuse based on Respondent's alleged failure to use its mark in commerce by July 28, 2010, the expiration of the time for filing a statement of use.

If Petitioner fails to file a second amended petition to cancel, or files an amended pleading which violates this order by including additional claims, this proceeding will go forward only as to the Section 2(d) claim.

Respondent is allowed until FIFTEEN DAYS from the date of service of any amended pleading to file its answer.

Because this order finds that Respondent was entitled to the insurance extension to July 28, 2010 of its time to file proof of use sufficient to support the registration, and as a result may submit evidence of its use prior to July 28, 2010 to rebut Petitioner's claims of nonuse prior to the expiration of the deadline for filing the statement of use, discovery is reopened for a limited period of THIRTY DAYS from the mailing date of this order for Petitioner (only) to seek information regarding Respondent's use of the mark during the extension period from January 29, 2010 to July 28, 2010.

Proceedings are resumed, and dates are reset below.

Plaintiff's Pretrial Disclosures                **4/11/2016**
Plaintiff's 30-day Trial Period Ends       **5/26/2016**
Defendant's Pretrial Disclosures            **6/10/2016**
Defendant's 30-day Trial Period Ends     **7/25/2016**
Plaintiff's Rebuttal Disclosures              **8/9/2016**
Plaintiff's 15-day Rebuttal Period Ends     **9/8/2016**

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.